UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MELINDA S. SEDORE,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　) 　Case No. 1:13-cv-849
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　) 　Honorable Robert J. Jonker
　　　　　　　　　　　　　　　　　　　)
COMMISSIONER OF　　　　　　　　　　　)
SOCIAL SECURITY,　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　) 　**REPORT AND RECOMMENDATION**
　　　　　　　Defendant.　　　　　　　)
_____)

　　　　　This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On July 6, 2010, plaintiff filed her applications for benefits alleging a May 17, 2010 onset of disability.[1] (A.R. 153-61). Her claims were denied on initial review. On March 21, 2012, plaintiff received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 36-84). On April 17, 2012, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 22-31). On June 25, 2013, the Appeals Council denied review (A.R. 1-3), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, August 2010 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ failed to give adequate weight to the opinion of a treating physician, Stephen Johnson, D.O.; and

2. The ALJ failed to find that plaintiff had the additional severe impairments of "lumbar spondylosis, lumbar radiculopathy, spinal stenosis, cervical radiculopathy, cervicalgia/chronic headaches, spinal arthritis, and adjustment disorder with depressed mood secondary to pain."

(Statement of Errors, Plf. Brief at 1-2, docket # 15). I recommend that the Commissioner's decision be affirmed.

**Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence

shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013) ("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

### Discussion

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on May 17, 2010, through the date of the ALJ's decision. (A.R. 24). Plaintiff had not engaged in substantial gainful activity on or after May 17, 2010. (*Id.*). Plaintiff had the following severe impairments: "mild degenerative disc disease of the lumbar spine, and mild degenerative disc disease of the cervical spine." (*Id.*). Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.

(A.R. 25). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work with a sit/stand option, with no climbing of ladders, ropes, or scaffolds, and no more than occasional climbing of ramps or stairs, balancing, stooping, crouching, crawling, or kneeling. (*Id.*). The ALJ found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (A.R. 25-29). Plaintiff was not able to perform any past relevant work. (A.R. 29). Plaintiff was 34-years-old as of her alleged onset of disability and 36-years-old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits she was classified as a younger individual. (*Id.*). Plaintiff has a limited education and is able to communicate in English. (*Id.*). The ALJ found that the transferability of job skills was not material to a disability determination. (*Id.*). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 29,000 jobs in Michigan that the hypothetical person would be capable of performing. (A.R. 79-82). The ALJ found that this constituted a significant number of jobs. Using Rule 202.18 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (A.R. 30-31).

**1.**

Plaintiff argues that Steven Johnson, D.O., was a treating physician and that the ALJ committed reversible error by failing to give adequate weight to his opinions. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to

any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician."). Likewise, "no special significance"[2] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

---

[2]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3).

An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 652 F.3d 653, 659-61 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

Plaintiff argues, without benefit of any supporting evidence or legal authority, that "Dr. Johnson is a treating source under the rules because Dr. Johnson is a member of Ms. Sedore's primary care practice, A-doc Medical, formerly Ionia Family Medicine, he saw Ms. Sedore on

multiple occasions, referred her out to a specialist, and referred her out for diagnostic studies before completing his assessment." (Plf. Brief at 9) (citing A.R. 29, 41, 278-307, 386-423, 424-26, 427-28). Issues raised in a perfunctory manner are deemed waived. *Clemente v. Vaslo*, 679 F.3d 482, 497 (6th Cir. 2012).

    Even assuming that plaintiff did not waive the issue, it is meritless. None of the fragments of the administrative record cited by plaintiff document treatment by Dr. Johnson.[3] The ALJ noted that Dr. Johnson was "one of the members of the claimant's primary care practice." He went on to explain why Johnson's RFC questionnaire responses were entitled to little weight. (A.R. 29). None of plaintiff's citations to the record establishes a treating relationship. Plaintiff cites a portion of a hearing transcript where her attorney described how his law firm arranged to have Dr. Johnson review plaintiff's medical records and then complete a RFC questionnaire.[4] (A.R. 41). Plaintiff provides a blanket citation to more than sixty pages of records from Family Medicine of Michigan and other medical practices, without attempting to identify any specific document providing evidence of treatment by Dr. Johnson. (A.R. 278-307, 386-423). Next, plaintiff cites the consultative examination report prepared by Cara Leahy, D.O. Dr. Leahy's report (A.R. 424-26) does not reflect any treatment provided by Dr. Johnson. Finally, plaintiff cites Johnson's questionnaire responses. (A.R. 427-28). The questionnaire responses are not treatment records.

---

[3]Defendant's brief highlighted the absence of evidence that Dr. Johnson treated plaintiff on any specific date, much less the "multiple occasions" alluded to in plaintiff's initial brief. (Def. Brief at 14, docket # 16). Plaintiff ignored the issue. (Reply Brief, docket # 17).

[4]Plaintiff's attorney did not elicit testimony from his client regarding treatment provided by Dr. Johnson. He limited his questions to whether plaintiff had seen Johnson's statement and whether she considered it to be an accurate description of her problems. (A.R. 74).

The ALJ did not commit any error under the treating physician rule. Plaintiff did not carry her burden of presenting evidence establishing that Dr. Johnson was a treating physician. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *Davis-Gordy v. Commissioner*, No. 1:11-cv-243, 2013 WL 5442418, at * 5-6 (W.D. Mich. Sept. 30, 2013); *accord Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). This record shows that Dr. Johnson performed services for plaintiff's attorney on reviewing medical records and completing a RFC questionnaire. (A.R. 41). Johnson may or may not have conducted an accompanying interview or physical examination. (A.R. 41, 427). Even assuming that Dr. Johnson saw plaintiff on one or more occasions, it would not be sufficient to establish a treating physician relationship. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). A single visit does not suffice to establish a treating physician relationship. *Id.* at 506. "Indeed, depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Id.* at 506-07. The ALJ did not commit error on this record by a failure to afford Dr. Johnson treating physician status. Plaintiff failed to submit medical evidence sufficient to establish that Johnson was a treating physician. Because Dr. Johnson was not a treating physician, the ALJ was not "under any special obligation to defer to [his] opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011). Nonetheless, the ALJ carefully considered Dr. Johnson's opinions and determined that the most extreme restrictions he suggested were not entitled to significant weight because they were not consistent with the objective evidence and the record as a whole.

Plaintiff's primary contact at Family Medicine of Michigan was Physician's Assistant Heather Dwyer. The physician's assistant repeatedly found that plaintiff's physical examination was

within normal limits. Her muscle strength was 5/5 and her deep tendon reflexes were positive and equal.[5] (A.R. 260, 262, 264, 266, 268). Plaintiff indicated that she had received treatment provided by Leonard Van Gelder, M.D., Steve Laster, M.D., and Molly Craven, D.O. (A.R. 217, 219, 243; *see* A.R. 279-306, 350-51, 422-23). There is no record of treatment provided by Dr. Johnson.

Plaintiff has never required back surgery. The ALJ noted that the objective medical tests showed that plaintiff had limited degenerative changes in her spine:

> [T]he medical evidence of record includes a MRI from September 2008 (Ex 1F/17-18); a thoracic spine MRI from October 2011 (Ex 5F/3) as well as another lumbar spine MRI from October 2011 (Ex. 5F/1); and a cervical spine MRI from February 2012 (Ex 8F1-2). The only mention of scoliosis is on the report of the second lumbar MRI, in the "clinical history" section, indicating the claimant's subjective allegation. None of the MRIs left any evidentiary impression of scoliosis. Both lumbar spine MRIs noted mild degenerative changes at L4-5 and L5-S1 without evidence of nerve root compromise or significant stenosis. The latter imaging noted some spondylotic ridging. The thoracic spine MRI revealed degenerative changes with disc extrusions from C6-7 through T8-9, with no spinal cord compression although the cord was in contact with the extrusion at the T5-6 level. The cervical spine MRI revealed mild to moderate degenerative changes from the C3-4 level through the C6-7 level, with mild spondylosis, mild to moderate neural foraminal narrowing, no intrinsic cord lesion, and no central canal stenosis.

(A.R. 27).

On October 26, 2010, R. Scott Lazzara, M.D., conducted a consultative examination. (A.R. 308-12). Plaintiff related that she lived with her boyfriend and her son. She was able to "do dishes, vacuum, and do chores around the house." She "enjoyed motorcycling, visiting with friends, and exercising on occasion." (A.R. 310). She stated that she smoked a pack of cigarettes per day for 15 years and that she drank "5 beers a week on and off." (*Id.*). Plaintiff's immediate, recent, and remote memory was intact with normal concentration. Her straight leg raising tests were negative

---

[5]In 2009, a year before plaintiff's alleged onset of disability, David Smith, M.D., reviewed Dwyer's records and approved Vicodin prescriptions. (A.R. 267, 269).

and she had no paravertebral muscle spasm. She had no difficulty getting on and off the examination table, no difficulty heel and toe walking, mild difficulty squatting, and no difficulty jumping. She had tenderness over facet joints, mostly on the right side. Other than a slight reduction in extension, plaintiff had a normal range of motion in her dorsolumbar spine. Her motor strength and tone were normal. Her reflexes were 2+ and symmetrical. She walked with a mild right limp that did not require the use of an assistive device. Dr. Lazarra found that plaintiff had some mild degenerative disc disease and was not then undergoing any active treatment. He found that continued conservative treatment would be appropriate. (A.R. 311-12).

On November 2, 2011, plaintiff appeared at the Sparrow Pain Management Center. She identified Dr. Craven as her primary care provider and the referring physician. (A.R. 338). Plaintiff stated that she did not experience anxiety, depression, or mood swings. (A.R. 340). Plaintiff revealed that years earlier she had received treatment for "meth" abuse and had experienced legal trouble stemming from her substance abuse. (A.R. 343). Plaintiff met with Psychologist Camala Riessinger. (A.R. 402-05). She told Riessinger that her former primary care physician, Dr. Van Gelder, gave her Vicodin to help control her pain. Her new primary care physician, Dr. Craven, would not prescribe Vicodin until plaintiff came to the Sparrow Pain Management Center. (A.R. 402). Plaintiff reported that she was not currently using illegal drugs and had learned her lesson from the legal troubles that drug abuse brought her. Based on plaintiff's responses during the interview, Psychologist Riessinger offered an initial assessment of an adjustment order with depressed mood secondary to pain. (A.R. 403).

On December 9, 2011, plaintiff met with Marci Deline, R.N., at the Sparrow Pain Management Center. Plaintiff's chief complaint was low back and left buttock pain, with a

secondary complaint of cervicalgia. (A.R. 346). Plaintiff stated that her current medications were Motrin and Vicodin. She denied any loss of bowel or bladder control, numbness, tingling, or weakness in her bilateral upper or lower extremities. (*Id.*). Subhash Gupta, M.D., performed an accompanying examination. Plaintiff was 5' 9" tall and weighed 165 pounds. She was alert, oriented in all three spheres, and displayed normal mood and affect. Her right leg was shorter than her left leg and she indicated that she did "utilize a lift with benefit at times." She had tenderness to palpation along her spine. Her straight leg raising tests were negative bilaterally. She did not have deficits in her deep tendon reflexes, muscle strength, and tone. (A.R. 347). The treatment plan adopted was to treat plaintiff with a series of epidural steroid injections and lumbar facet blocks. (A.R. 347, 356-57). In December 2011 and January 2012, Kenneth Rudman, M.D., performed these procedures at the Sparrow Pain Management Center. (A.R. 321-37, 408-11). On February 2, 2012, plaintiff stated to Nurse Deline that the medications that she received from other care providers (Motrin, Vicodin, and Tramadol) were providing minimal pain relief. She stated that she had experienced "some mild benefit" from the treatment she had received at the pain clinic, "but no overall change." Her straight leg raising tests were negative and there were no deficits in her deep tendon reflex, muscle strength, tone, and range of motion. Nurse Deline encouraged plaintiff to return to her primary care physician. (A.R. 406-07).

On March 14, 2012, Cara Leahy, D.O., conducted a consultative examination at the Sparrow Ionia Neurologic Clinic. (A.R. 424-26). According to plaintiff's attorney, he sent plaintiff to Dr. Johnson, and Johnson in turn "referred her out to a neurologist [] and then with that information was then able to [] complete [his] report." (A.R. 41). Neurologist Leahy described plaintiff as "an alert and pleasant woman in no acute distress." (A.R. 426). She recorded plaintiff's

subjective complaints. (A.R. 424-25). Plaintiff conceded that she continued to smoke cigarettes. She reported that she "did not drink alcohol or use illegal drugs." (A.R. 424). On examination, Dr. Leahy found that plaintiff was oriented in all three spheres. Her speech was fluent and her memory was intact. Her comprehension was normal. Her muscle tone and strength were normal. Plaintiff's deep tendon reflexes were "graded 2/4 symmetrically in all 4 limbs." Her gait was stable with normal stride length. She was able to perform "heel-toe and tandem" gait without difficulty. Plaintiff's MRI revealed "no evidence of neural foraminal narrowing encroaching on exiting nerve roots or central canal stenosis." Dr. Leahy recommended a trial of "gabapentin or Elavil." (A.R. 425-26).

Dr. Johnson conducted a review of plaintiff's medical records (A.R. 41), and signed a two-page RFC questionnaire on March 16, 2012. (A.R. 427-28). Johnson indicated that he "saw" plaintiff on March 5, 2012, but no underlying progress notes generated in connection with this visit were filed in support of plaintiff's claims for DIB and SSI benefits. Dr. Johnson offered a series of opinions regarding plaintiff's exertional limitations. In addition, he offered opinions that plaintiff would have severe limitations as to pace and concentration which would take her off task more than 20% of the time, and if plaintiff had been working, "she would need frequent and unscheduled breaks," and "she would likely miss 3 or more days per month of work and likely to be tardy 3 or more days per month." This collection of work-preclusive restrictions was not supported by explanations, much less objective medical evidence. (A.R. 427-28).

The ALJ gave weight to some of the restrictions that Dr. Johnson suggested, but found that the extreme restrictions he endorsed were not supported by the objective medical evidence or the record as a whole:

> Dr. Johnson, one of the members of the claimant's primary care practice, opined on March 16, 2012, that the claimant would be off-task 20% or more each workday, and would likely miss three or more days of work per month and be tardy three or more days per month; she is best suited to part-time employment; and she would need additional frequent rest breaks while at work. He also indicated that the claimant could sit or stand no more than two hours at a time and no more than six hours each, per day, and could never lift more than ten pounds. (Ex. 10F). This opinion is given some weight, in terms of the claimant being able to sit/or stand/walk six hours each per workday, but no weight in terms of expected absences. The clinical and objective evidence supports no more than minimal limitations based on mild signs and symptoms. At no time has objective imaging or the results of a clinical exam supported the degree of limitations alleged.

(A.R. 29). The restrictions Johnson suggested in his questionnaire responses were not supported by objective evidence and were inconsistent with the record as a whole. In addition, Johnson's predictions of how often plaintiff would likely have been absent, tardy, or off task if she had been working were conjecture, not medical opinions. *See Murray v. Commissioner*, 1:10-cv-297, 2011 WL 4346473, at * 7 (W.D. Mich. Aug. 25, 2011) (collecting cases). Further, the issues of disability and RFC are reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Allen v. Commissioner*, 561 F.3d at 652. Here, the ALJ gave a more than adequate explanation of his consideration of the RFC questionnaire at issue, and incorporated into his RFC findings the restrictions suggested by Dr. Johnson that were supported by objective medical evidence and the record as a whole. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Commissioner*, 245 F.3d at 534. The ALJ's factual finding that plaintiff retained the RFC for a limited range of light work is supported by more than substantial evidence. I find no basis for disturbing the Commissioner's decision.

**2.**

Plaintiff argues that the ALJ committed reversible error when he failed to find that she had the additional severe impairments of lumbar spondylosis, lumbar radiculopathy, spinal stenosis, cervical radiculopathy, cervicalgia/chronic headaches, spinal arthritis, and adjustment disorder with depressed mood secondary to pain. (Plf. Brief at 1-2, 14; Reply Brief at 1-3). The finding of a severe impairment at step 2 is a threshold determination. The finding of a single severe impairment is sufficient to require continuation of the sequential analysis. *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had two severe impairments. (A.R. 24). The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008). The ALJ continued the sequential analysis and considered all plaintiff's severe and non-severe impairments in making his factual finding regarding plaintiff's RFC. (A.R. 24-29). Plaintiff's assignment of error is legally unsupportable.

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated: July 24, 2014      /s/ Joseph G. Scoville
                                           United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).